IN THE UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF TEXAS
DALLAS DIVISION

| | | |
|---|---|---|
| MT. HAWLEY INSURANCE COMPANY | § § § | |
| Plaintiff, | § § | |
| VS. | § § | NO. 3-03-CV-2729-BD |
| WRIGHT MATERIALS, INC., ET AL. | § § § § | |
| Defendants. | § | |

**MEMORANDUM OPINION AND ORDER**

This insurance coverage dispute is before the court on cross-motions for summary judgment. At issue is whether Plaintiff Mt. Hawley Insurance Company ("Mt. Hawley") has a duty to defend or indemnify its insureds, Defendants Wright Materials, Inc. and Magic Valley Concrete, Ltd. (collectively referred to as "MVC Defendants"), in a negligence and products liability lawsuit filed by 134 construction workers in Texas state court. For the reasons stated herein, plaintiff's motion is granted and defendants' motion is denied.

I.

The MVC Defendants are engaged in the manufacture, distribution, and sale of cement, ready-mix concrete, and related products. (*See* Plf. MSJ App. 3, 34, 68, 106, 144, 186). From May 5, 1998 through November 6, 2003, one or more defendants were insured under various Commercial General Liability policies issued by Mt. Hawley. (*Id.*, Exhs. A, B, C, D, E, F). Each policy provides coverage for "bodily injury" and "property damage" caused by an "occurrence" that takes place in the "coverage territory" during the policy period. (*Id.* at 9, 38, 72, 108, 146, 190). The policies

further provide that Mt. Hawley has the right and duty to defend any "suit" seeking damages on account of bodily injury or property damage. (*Id.*). However, the coverage provisions of each policy are limited by identical or nearly identical special endorsements excluding claims arising out of the actual, alleged, or threatened discharge, dispersal, release, or escape of "pollutants" or "contaminants." (*See id.* at 25, 67, 96, 134, 178, 221). Three of the policies issued by Mt. Hawley define "pollutants" and "contaminants" as "any solid, liquid, gaseous or thermal irritant, including smoke, vapor, soot, fumes, acids, alkalis, chemicals and waste derived from any source, including but not limited to petroleum derivative produces, which contaminate, pollute and/or defile any physical substance or matter." (*Id.* at 25, 82, 118). Later policies expand the definition of "pollutants" to include airborne fibers, toxins, biological irritants or contaminants, lead, and asbestos. (*See id.* at 67, 179, 221). In addition, endorsements to five of the six policies specifically exclude claims "arising out of . . . exposure to silica products [and] silica dust or silica in any form." (*Id.* at 56, 88, 123, 161, 188).

On or about June 30, 2003, the MVC Defendants were sued by Victor Aleman and 133 other construction workers in the district court of Hidalgo County, Texas ("Aleman litigation"). In their state court petition, the Aleman plaintiffs allege that they were injured as a result of exposure to cement, cement dust, ready-mix concrete, silica dust, and related products manufactured, produced, or sold by various parties, including the MVC Defendants. (*See* Plf. Supp. MSJ App. at 245-46). MVC promptly tendered the defense of the Aleman litigation to Mt. Hawley and demanded coverage under their respective policies. However, Mt. Hawley denied coverage and refused to provide a defense based on the pollution and silica exclusions. (Plf. MSJ App. at 2, ¶ 6). Mt. Hawley then filed this declaratory judgment action against the MVC Defendants and the Aleman plaintiffs in federal district court to determine the rights and duties of the parties under the terms of the insurance

policies.[1]  The MVC Defendants counterclaim for breach of contract.  The case is before the court on cross-motions for summary judgment.  The issues have been fully briefed by the parties and the motions are ripe for determination.

II.

Summary judgment is proper when there is no genuine issue as to any material fact and the movant is entitled to judgment as a matter of law.  FED. R. CIV. P. 56(c); *Celotex Corp. v. Catrett*, 477 U.S. 317, 322, 106 S.Ct. 2548, 2552, 91 L.Ed.2d 265 (1986).  A dispute is "genuine" if the issue could be resolved in favor of either party.  *Matsushita Electric Industrial Co. v. Zenith Radio Corp.*, 475 U.S. 574, 586, 106 S.Ct. 1348, 1356, 89 L.Ed.2d 538 (1986).  A fact is "material" if it might reasonably affect the outcome of the case.  *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248, 106 S.Ct. 2505, 2510, 91 L.Ed.2d 202 (1986).  Cases involving the interpretation of insurance policies are particularly appropriate for summary disposition.  *See Principal Health Care of Louisiana v. Lewer Agency, Inc.*, 38 F.3d 240, 242 (5th Cir. 1994); *SnyderGeneral Corp. v. Great American Insurance Co.*, 928 F.Supp. 674, 677 (N.D. Tex. 1996) (Kaplan, J.), *aff'd*, 133 F.3d 373 (5th Cir. 1998).

The disposition of the pending motions rests on an interpretation of various pollution and silica exclusions included in the Mt. Hawley policies.  Under Texas law, the insurer has the burden to prove that an exclusion applies.  *Primrose Operating Co. v. National American Insurance Co.*, 382 F.3d 546, 553 (5th Cir. 2004); *Sentry Insurance v. R.J. Weber Co.*, 2 F.3d 554, 556 (5th Cir. 1993).  *See also* TEX. INS. CODE ANN. § 554.002 (Vernon Supp. 2005).  The burden then shifts to the insured to establish an exception to the exclusion or show that coverage exists under some other

---

[1] Federal jurisdiction is proper because Mt. Hawley is a citizen of Illinois, the MVC Defendants and Aleman plaintiffs are citizens of Texas, and the amount in controversy exceeds $75,000, exclusive of interest and costs.  (Plf. Orig. Compl. at 4-5, ¶¶ 1-4).  *See* 28 U.S.C. § 1332(a)(1).

policy provision. *Primrose*, 382 F.3d at 553. The parties may satisfy their respective burdens by tendering depositions, affidavits, and other competent evidence. *See Topalian v. Ehrman*, 954 F.2d 1125, 1131 (5th Cir.), *cert. denied*, 113 S.Ct. 82 (1992). All evidence must be viewed in the light most favorable to the party opposing the motion. *See Rosado v. Deters*, 5 F.3d 119, 122 (5th Cir. 1993).

III.

The issue squarely presented in this case is whether Mt. Hawley has a duty to defend the MVC Defendants in the Aleman litigation. All parties agree that the resolution of this issue is governed by the "eight corners test," also known as the "complaint allegation rule." Under Texas law, the duty to defend is determined solely by reference to the allegations of the latest complaint in the underlying lawsuit and the terms of the policy. *See Allstate Insurance Co. v. Disability Services of the Southwest Inc.*, 400 F.3d 260, 263 (5th Cir. 2005); *King v. Dallas Fire Insurance Co.*, 85 S.W.3d 185, 187 (Tex. 2002). The allegations of the complaint must be liberally construed and accepted as true. *Disability Services*, 400 F.3d at 263; *see also Gulf Chemical & Metallurgical Corp. v. Associated Metals & Minerals Corp.*, 1 F.3d 365, 369 (5th Cir. 1993). The duty to defend "is not affected by facts ascertained before suit, developed in the process of the litigation, or by the ultimate outcome of the suit." *Gemmy Industries Corp. v. Alliance General Insurance Co.*, 190 F.Supp.2d 915, 918 (N.D. Tex. 1998) (Kaplan, J.), *aff'd*, 200 F.3d 816 (5th Cir. 1999) (Table), *quoting American Alliance Insurance Co. v. Frito-Lay, Inc.*, 788 S.W.2d 152, 154 (Tex. App.--Dallas 1990, writ dism'd); *see also Colony Insurance Co. v. H.R.K., Inc.*, 728 S.W.2d 848, 850 (Tex. App.-- Dallas 1987, no writ). The insurer must provide a defense if the complaint contains at least one claim that is facially within the policy's coverage. *Disability Services*, 400 F.3d at 263; *Primrose*, 382 F.3d at 552.

Mt. Hawley contends that the claims alleged in the latest petition filed by the Aleman plaintiffs arise out of the release or escape of pollutants and are excluded from coverage under the express terms of insurance policies. The MVC Defendants respond that the policies contain a latent ambiguity with respect to coverage for claims arising out of "contact with" cement and ready-mix concrete products.

A.

The most recent pleading filed by the Aleman plaintiffs in the state court litigation alleges that plaintiffs were injured while working with cement, ready-mix concrete, and related products that were manufactured, distributed, or sold by the MVC Defendants. More particularly, the Aleman plaintiffs contend that their injuries were caused by exposure to "dust" generated by those materials while "cutting portions of the ready mix that had hardened into concrete, mixing cement with sand and gravel to make [ ] concrete and while attempting to level off those areas where the ready mix had not been spread or cured properly." (*See* Plf. Supp. MSJ App. at 245-335). Plaintiffs further allege that a significant amount of cement dust got into their eyes, nose, and mouth when they opened bags of cement. (*Id.*). According to the Aleman plaintiffs:

> The cement, ready-mix and the additives contain toxic ingredients which are hazardous to human health. The aforementioned equipment generates clouds of dust, sand and silica when said equipment is used to drill, saw or sand the hardened concrete. The Plaintiffs herein have worked herein for years as cement finishers, tile setters and brick layers and in other aspects of the construction industry. During their work, they have come into contact with cement, ready-mix concrete, concrete and with the dust generated therefrom when the hardened concrete has had to be cut, sawed, drilled or sanded. Plaintiffs have suffered multiple, severe and incapacitating injuries as a direct result of their exposure to the aforementioned products from which they have received little to no protection from the 3M masks that they have used.

(*Id.* at 335-36). Plaintiffs characterize their injuries, which include eye irritation, burns, nose bleeds, shortness of breath, headaches, body aches, cough, chest pains, insomnia, nausea, limb stiffness, nervousness, and drowsiness, as "cement dust-related disease." (*Id.* at 359).

The court has little difficulty in concluding that such injuries are excluded from coverage under each of the Mt. Hawley policies. Specifically, the second and third policies issued to Wright Materials, covering the period from May 5, 1999 to May 5, 2001, and all three policies issued to Magic Valley Concrete, covering the period from November 6, 2000 to November 6, 2003, contain endorsements that exclude coverage for:

> "Bodily Injury" or "Property Damage," or any other loss, cost or expense *arising out of the presence, ingestion, inhalation or absorption of or exposure to silica products, silica fibers, silica dust or silica in any form*, or to any obligation of the insured to indemnify any party because of damages arising out of the presence, ingestion, inhalation or absorption of or exposure to silica products, silica fibers, silica dust or silica in any form.

(Plf. MSJ App. at 56, 88, 123, 161, 188) (emphasis added). In light of this unambiguous language, Mt. Hawley has no duty to defend any claims arising out of the inhalation of or exposure to silica products.[2] *See Clarendon American Insurance Co. v. Bay, Inc.*, 10 F.Supp.2d 736, 742 (S.D. Tex. 1998).

The court also notes that all six policies issued to the MVC Defendants contain some kind of endorsement that excludes coverage for injuries arising out of the discharge or release of any pollutants or contaminants. (*See* Plf. MSJ App. at 25, 67, 82, 96, 118, 134, 178-179, and 221). The narrowest of these endorsements, which is contained in the first policy issued to Wright Materials, excludes coverage for:

---

[2] Although the terms "silica" and "silica products" are not defined in any of the policies, the dictionary defines "silica" as "[a] white or colorless crystalline compound [ ] occurring as quartz, sand, flint, agate, and many other minerals and used to make glass and concrete." WEBSTER'S II NEW COLLEGE DICTIONARY at 1027 (1995).

> "Bodily Injury," "property damage" or "personal injury" *arising out of the actual, alleged or threatened discharge, dispersal, release or escape of pollutants or contaminants* . . . caused by any of your Product/Completed Operations[.]
>
> As used in this endorsement, *pollutants or contaminants means any solid, liquid, gaseous or thermal irritant*, including smoke, vapor, soot, fumes, acids, alkalis, chemicals and waste derived from any source, including but not limited to petroleum derivative products, which contaminate, pollute and/or defile any physical substance or matter[.]

(*Id.* at 25) (emphasis added). In construing a similar endorsement, the Texas Supreme Court held that such "absolute" pollution exclusions are clear, unambiguous, and preclude coverage for any injury arising from or which would not have occurred but for the discharge or release of "pollutants." *See National Union Fire Insurance Co. v. CBI Industries, Inc.*, 907 S.W.2d 517, 521-22 (Tex. 1995). Here, the Aleman plaintiffs seek damages for bodily injuries caused by the discharge or release of toxic ingredients contained in cement dust generated by their work activities. The cement dust and any toxins contained therein are irritants or contaminants under the terms of the pollution exclusion. Therefore, Mt. Hawley has no duty to defend any claims arising out of the discharge or release of such materials. *See Clarendon*, 10 F.Supp.2d at 743 (holding that dust, sand, and other substances containing silica, and fumes from cement and its additives, are irritants and contaminants under policy defining "pollution" as "any solid, liquid, gaseous, or thermal irritant or contaminant").

B.

In an effort to avoid summary judgment, the MVC Defendants rely on a narrow exception to the otherwise absolute pollution exclusion recognized in *Clarendon*. Like the instant case, the underlying state court litigation in *Clarendon* was brought by construction workers who were exposed to cement and its toxic ingredients. However, some of the plaintiffs in the state court action specifically alleged that their injuries were caused "by contact with wet cement[.]" The *Clarendon*

court held those claims involving the inhalation of dust, sand, gravel, and other particulates fell within the unambiguous terms of the pollution exclusion, but was unable to ascertain definitively from the state court pleadings whether claims based on "exposure to" and "contact with" wet cement and concrete resulted from the "discharge dispersal, seepage, migration, release or escape of pollutants." Because of this latent ambiguity, the court denied summary judgment as to the "contact" claims. *Clarendon*, 10 F.Supp.2d at 744.

Although the Aleman plaintiffs allege they "have come into contact with cement, ready-mix concrete, concrete and with the dust generated therefrom," (*see* Plf. Supp. MSJ App. at 335), a fair reading of their petition makes clear that the plaintiffs base their claims on "cement dust-related disease." The state court pleadings are entirely devoid of any allegation regarding injuries from "direct contact" with wet cement or concrete as alleged in *Clarendon*. Rather, the Aleman plaintiffs contend they were injured while "carrying out [their] duties such as sawing and finishing, *during which the amount of dust generated by said materials was tremendous and got into [their] face, eyes, hair, nose and mouth*[.]" (Plf. Supp. MSJ App. at 245) (emphasis added). The Aleman plaintiffs further allege they "had to open bags of cement manufactured, distributed and/or sold by the Defendants [ ] *and in so doing, a significant amount of cement dust got into the eyes, nose and mouth of the Plaintiff[s]*." (*Id.*) (emphasis added). As cement finishers, plaintiffs "came into contact with" cement when the hardened concrete had to be cut, sawed, drilled, and sanded. Their complaint focuses on the "clouds of dust" generated by these activities and not on direct contact with cement products in any other physical state. (*Id.* at 335). Such allegations are almost identical to those the *Clarendon* court excluded from coverage. *Clarendon*, 10 F.Supp.2d at 744. *See also Zaiontz v. Trinity Universal Insurance Co.*, 87 S.W.3d 565, 573 (Tex. App.--San Antonio 2002, no writ) (limiting *Clarendon* exception to claims involving contact with wet cement).

The court determines that all claims asserted by the Aleman plaintiffs in the state court litigation fall within the scope of the pollution and silica exclusions of the various Mt. Hawley policies. The MVC Defendants have failed to establish an exception to those exclusions or show that coverage exists under some other policy provision. Therefore, Mt. Hawley has no duty to defend the MVC Defendants in the state court action.

C.

Where there is no duty to defend there is no duty to indemnify, if "the same reasons that negate the duty to defend likewise negate any possibility the insurer will ever have a duty to indemnify." *Farmers Texas County Mutual Insurance Co. v. Griffin*, 955 S.W.2d 81, 84 (Tex. 1997). Such is the case here. The court has determined that none of the insurance policies provide coverage for the claims asserted by the Aleman plaintiffs. Consequently, Mt. Hawley has no duty to indemnify the MVC Defendants for costs incurred or payments made in connection with the state court litigation.

## **CONCLUSION**

Plaintiff's motion for summary judgment is granted and defendants' motion for summary judgment is denied. By separate order issued today, the court will enter a declaratory judgment that Mt. Hawley Insurance Company has no duty to defend or indemnify Wright Materials, Inc. and Magic Valley Concrete, Ltd. in Cause No. C-1603-03-G, styled *Victor Aleman, et al. v. Alamo Cement Co., et al.*, in the District Court of Hidalgo County, Texas. Plaintiff's request for attorney's fees will be determined in accordance with the procedures set forth in Fed. R. Civ. P. 54(d)(2).[3]

---

[3] RLI Insurance Company, who is named as a plaintiff in the First Amended Complaint filed on October 19, 2004, has not filed a motion for summary judgment as directed by the court. In addition, seven Aleman plaintiffs who were named as defendants in this declaratory judgment action and served with process have failed to answer or appear herein. More than 120 Aleman plaintiffs named as defendants have not been served. Because RLI and the Aleman plaintiffs have not consented to the jurisdiction of the magistrate judge, the district judge originally assigned to the case will enter further orders governing those parties.

SO ORDERED.

DATED: October 27, 2005.

JEFF KAPLAN
UNITED STATES MAGISTRATE JUDGE